1 | SEYFARTH SHAW LLP
Jon D. Meer (SBN 144389)
2 | E-mail: jmeer@seyfarth.com
Jonathan L. Brophy (SBN 245223)
3 | E-mail: jbrophy@seyfarth.com
2029 Century Park East, Suite 3500
4 | Los Angeles, California 90067-3021
Telephone: (310) 277-7200
5 | Facsimile: (310) 201-5219

6 | Attorneys for Defendant
BAXTER HEALTHCARE
7 | CORPORATION (erroneously sued as
BAXTER HEALTHCARE, INC.)

8

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

**CV11-05447** SVW (JEMx)

11 | DAVID KAPLAN                              ) Case No. _____

12 |          Plaintiff,                       ) **DEFENDANT BAXTER**
                                             ) **HEALTHCARE**
13 |     v.                                    ) **CORPORATION'S NOTICE OF**
                                             ) **REMOVAL**
14 | BAXTER HEALTHCARE, INC., a                )
Delaware corporation; and DOES 1           ) Complaint Filed:   May 31, 2011
15 | THROUGH 50, Inclusive;                    )
                                             )
16 |          Defendants.                      )
                                             )
17 |

18

19

20

21

22

23

24

25

26

27

28

---

DEFENDANT BAXTER HEALTHCARE CORPORATION'S NOTICE OF REMOVAL
CASE NO. _____

1  **TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL**

2  **DISTRICT OF CALIFORNIA AND TO PLAINTIFF DAVID KAPLAN AND**

3  **HIS ATTORNEYS OF RECORD:**

4       PLEASE TAKE NOTICE that Defendant Baxter Healthcare Corporation

5  ("BAXTER") hereby files this Notice of Removal pursuant to 28 U.S.C. Sections

6  1332, 1441(a), and 1446, based on diversity of citizenship jurisdiction, in order to

7  effect the removal of the above-captioned action from the Superior Court of the

8  State of California for the County of Los Angeles, to the United States District

9  Court for the Central District of California, and states that the removal is proper for

10  the following reasons:

11  **I.   PLEADINGS, PROCESSES, AND ORDERS**

12       1.   On May 31, 2011 Plaintiff David Kaplan ("Plaintiff") filed a

13  Complaint for Damages in the Superior Court of the State of California, County of

14  Los Angeles, entitled, "DAVID KAPLAN, Plaintiff, v. BAXTER

15  HEALTHCARE, INC., a Delaware corporation; and DOES 1 THROUGH 50,

16  Inclusive," ("Complaint") designated Los Angeles County Superior Court Case

17  No. SC112798.

18       2.   The Complaint alleges two purported causes of action as follows:

19  (a) "Wrongful Termination in Violation of Public Policy," and (b) "Intentional

20  Infliction of Emotional Distress."

21       3.   On or about June 2, 2011, BAXTER, for the very first time, received

22  notice of this lawsuit when it was served with Plaintiff's Summons and Complaint

23  and accompanying documents.  At no time prior to the service of this Summons

24  and Complaint was BAXTER given notice of the pending lawsuit.  All process,

25  pleadings, notices and orders received by BAXTER in this action are attached as

26  Exhibit A hereto, as required by 28 U.S.C. § 1446(a) and are incorporated by

27  reference as though fully set forth herein.

28

1

1      4.      On June 29, 2011, BAXTER filed its Answer to Plaintiff's Complaint

2  in Los Angeles County Superior Court.  A conformed copy of the Answer is

3  attached hereto as Exhibit B.

4  **II.      TIMELINESS OF REMOVAL**

5      5.      Without conceding that service of the Summons and Complaint was

6  effective for purposes of 28 U.S.C. Section 1446(b), this Notice of Removal is

7  timely because it is being filed within thirty (30) days of BAXTER's receipt of the

8  Summons and Complaint on June 2, 2011, and within one (1) year of the

9  commencement of this action.  Thus, removal is timely pursuant to 28 U.S.C. §

10  1446(b) and Federal Rule of Civil Procedure 6(a).  *See also Murphy Bros., Inc. v.*

11  *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (removal is timely if

12  made within 30 days after complaint is served on defendant).

13  **III.      DIVERSITY OF CITIZENSHIP JURISDICTION**

14      6.      This action may be properly removed on the basis of diversity of

15  citizenship jurisdiction, in that it is a civil action between citizens of different

16  states and the amount in controversy exceeds the sum of $75,000, exclusive of

17  interest and costs.  28 U.S.C. §§ 1332(a)(1), 1441(a).

18      **A.      Plaintiff's Citizenship**

19      7.      For diversity purposes, a person is a "citizen" of the state in which he

20  is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir.

21  1983).  A party's residence is prima facie evidence of his domicile.  *State Farm*

22  *Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  Plaintiff has alleged

23  that "[a]t all relevant times [he] was and is a resident of the County of Los

24  Angeles, State of California." (Exhibit A, Complaint, ¶ 1).  Plaintiff, therefore, is,

25  and at all times since the commencement of this action has been, a citizen and

26  resident of the State of California.

27

28

**B.    BAXTER's Citizenship**

8.     BAXTER is now, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. Section 1332(c)(1).

9.     Pursuant to 28 U.S.C. Section 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The United States Supreme Court's decision in *The Hertz Corp. v. Friend*, __ U.S. __, 130 S.Ct. 1181 (2010), has now clarified the meaning of Section 1332(c).  Specifically, the Supreme Court held that a corporation's "principal place of business" for determining its citizenship is the corporation's "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.  It is the place that Courts of Appeals have called the corporation's "nerve center."  **And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination,** *i.e.,* **the "nerve center"** ....

*Id.* at 1192 (emphasis added).

10.    BAXTER is now, and was at all relevant times, incorporated under the laws of the State of Delaware.  BAXTER's headquarters are located at One Baxter Parkway, in Deerfield, Illinois.  BAXTER's officers work from its headquarters in Illinois and direct, control, and coordinate BAXTER's activities from the headquarters in Illinois.

11.    Therefore, BAXTER is not a citizen of the State of California.  Rather, BAXTER is a citizen of the State of Delaware and the State of Illinois pursuant to the Supreme Court's holding in *The Hertz Corp.*, 130 S.Ct. at 1192.

DEFENDANT BAXTER HEALTHCARE CORPORATION'S NOTICE OF REMOVAL
CASE NO. _____

### C.   **Doe Defendants' Citizenship**

12.    The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal.  28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

13.    Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of Doe defendants one through fifty, inclusive, does not deprive this Court of jurisdiction.

## IV.   **AMOUNT IN CONTROVERSY**

14.    While BAXTER denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000.  *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 404 (9th Cir. 1996) ("[D]efendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount.").  As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).

15.    In determining whether a complaint meets the $75,000 threshold of 28 U.S.C. Section 1332(a), a court may consider the aggregate value of claims for compensatory and punitive damages, as well as attorneys' fees.  *See, e.g., Bell v. Preferred Life Ass. Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.") (footnote omitted);

4

1 | *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) *cert. denied*,

2 | 459 U.S. 945 (1982) (attorneys' fees may be taken into account to determine

3 | jurisdictional amount).

4 |       16.    The allegations in the Complaint make clear that Plaintiff believes that

5 | the amount in controversy is well in excess of $75,000.  Plaintiff alleges that he

6 | was wrongfully terminated in retaliation for complaining about improper sales

7 | practices.  He alleges that his termination caused him to lose wages and benefits.

8 | He also alleges that the manner of the termination caused him emotional distress

9 | and alleges that the Complaint supports punitive damages.

10 |       17.    Specifically, Plaintiff alleges that he was employed by Defendant

11 | from "2008," until November 4, 2010, the approximate date of Plaintiff's

12 | separation.  (Exhibit A, Complaint, ¶¶ 2, 40).  Plaintiff alleges that, as a result of

13 | BAXTER's purported acts, he has suffered the lost wages and other benefits.

14 | (Exhibit A, Complaint, ¶ 48).  In 2010, Plaintiff had a base pay rate of $175,000

15 | per year, not including any commission pay.  Therefore, because it has been

16 | approximately eight months since his termination (November 2010 through June

17 | 2011), and because Plaintiff was earning approximately $14,583.33 per month, his

18 | damages thus far would total approximately $116,666.66.

19 |       18.    Plaintiff also seeks emotional distress damages.  Specifically, Plaintiff

20 | alleges that, as a result of BAXTER's purported acts, he "suffer[ed] great stress

21 | and severe emotional and psychological distress both during and after his

22 | employment by Baxter."  (Exhibit A, Complaint, ¶ 54 ).  Emotional distress

23 | damages may be considered when calculating the amount in controversy even

24 | where not clearly pled in the complaint. *Simmons v. PCR Tech.*, 209 F. Supp. 2d

25 | 1029, 1034 (N.D. Cal. 2002) ; *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450

26 | (S.D. Cal. 1995) ("the vagueness of plaintiffs' pleadings with regard to emotional

27 | distress damages should not preclude this Court from noting that these damages are

28 |

1  potentially substantial").  A review of jury verdicts in California demonstrates that

2  emotional distress awards in wrongful termination cases related to whistleblower

3  claims and intentional infliction of emotional distress claims with similar facts to

4  the instant case commonly exceed $75,000.  *See e.g., Perez vs. Lake Avenue*

5  *Congregational Church of Pasadena*, 2004 WL 5066208 (Los Angeles County

6  Sup. Ct.) (jury award of $350,000 non-economic damages for wrongful

7  termination claim based on whistleblower facts); *Gregg Levin v. Canon Business*

8  *Solutions Inc.*, 2009 WL 4069942 (Los Angeles County Sup. Ct.) (jury award of

9  $150,000 against corporate defendant on plaintiff's intentional infliction of

10  emotional distress claim).  (Copies of these verdicts are attached hereto as

11  Exhibit C).

12      19.    Plaintiff claims that he is entitled to attorneys' fees.  (Exhibit A,

13  Complaint, Prayer For All Causes of Action No. 5).

14      20.    Plaintiff also claims that he "is entitled to an award of punitive

15  damages."  (Exhibit A, Complaint, ¶¶ 49, 55; Prayer For All Causes of Action

16  No. 3).  Requests for punitive damages must be taken into account in ascertaining

17  the amount in controversy.  *Davenport v. Mutual Benefit Health and Accident*

18  *Assn.*, 325 F.2d 785, 787 (9th Cir. 1963).  The amount of punitive damages

19  awarded is based on the financial worth of the defendant, and is meant to punish

20  the defendant in such a way that it will have a tangible financial consequence.

21  Without conceding that punitive damages are appropriate or applicable here, for a

22  defendant of BAXTER's net worth, it is obvious that a punitive damages award, if

23  assessed, would exceed $75,000.

24      21.    The Plaintiff's allegations of various forms of damages easily exceed

25  $75,000.  Lost wages, current and future, alone could easily amount to over

26  $75,000, as demonstrated above.  Plaintiff also alleges that he "suffer[ed] great

27  stress and severe emotional and psychological distress both during and after his

28

1   employment by Baxter." (Exhibit A, Complaint, ¶ 54 ).  Medical costs alone could

2   easily amount to more than $75,000.  Plaintiff alleges that he is entitled to

3   attorneys' fees.  Without conceding that attorneys' fees are appropriate or

4   applicable here, such fees from inception of this case through trial will easily be

5   more than $75,000.

6        22.    Accordingly, since the amount in controversy exceeds $75,000, the

7   requirements for removal under 28 U.S.C. Sections 1332(a) and 1441(a) are

8   satisfied and this Court has original jurisdiction.

9   **V.    VENUE**

10        23.    Plaintiff alleges that "Baxter hired plaintiff to work from his home

11  located on Wilshire Boulevard in Los Angeles, California"  (Exhibit A, Complaint,

12  ¶ 2).

13        24.    The County of Los Angeles lies within the jurisdiction of the United

14  States District Court, Central District.

15        25.    Therefore, without waiving BAXTER's right to challenge, among

16  other things, personal jurisdiction and/or venue by way of a motion or otherwise,

17  venue lies in the Central District of this Court pursuant to 28 U.S.C. Sections

18  84(c), 1441(a), and 1446(a).  This Court is the United States District Court for the

19  district within which the State Court Action is pending.  Thus, venue lies in this

20  Court pursuant to 28 U.S.C. Section 1441(a).

21  **VI.    SERVICE OF NOTICE OF REMOVAL ON STATE COURT**

22        26.    A true and correct copy of this Notice of Removal will be promptly

23  served on Plaintiff and filed with the Clerk of the Superior Court of the State of

24  California, County of Los Angeles, as required under 28 U.S.C. Section 1446(d).

25  / / /

26  / / /

27  / / /

28

DEFENDANT BAXTER HEALTHCARE CORPORATION'S NOTICE OF REMOVAL
CASE NO. _____

1    27.    WHEREFORE, BAXTER prays that this civil action be removed

2    from the Superior Court of the State of California, County of Los Angeles, to the

3    United States District Court for the Central District of California.

4

5    DATED: June 30, 2011                     SEYFARTH SHAW LLP

6

7                                             By

8                                                 Jon D. Meer
                                                 Jonathan L. Brophy
9                                             Attorneys for Defendant
                                             BAXTER HEALTHCARE, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT BAXTER HEALTHCARE CORPORATION'S NOTICE OF REMOVAL
CASE NO. _____

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             )   ss
COUNTY OF LOS ANGELES        )

     I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 2029 Century Park East, Suite 3500, Los Angeles, California 90067-3021.  On June 30, 2011, I served the within documents:

**DEFENDANT BAXTER HEALTHCARE CORPORATION'S NOTICE OF REMOVAL**

☐   I sent such document from facsimile machine (310) 201-5219 on June 30, 2011.  I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine (310) 201-5219 which confirms said transmission and receipt.  I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, addressed as set forth below.

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Grant A. Carlson, Esq.
Wendy K. Shiff, Esq.
FRIEDMAN, ENRIQUEZ & CARLSON, LLP
433 North Camden Drive, Suite 965
Beverly Hills, CA 90210
Telephone:  (310) 273-0777
Facsimile:  (310) 273-1115

     I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

     Executed on June 30, 2011, at Los Angeles, California.

                                        _____
                                           Patricia L. Haden

1

# Exhibit "A"

 CT Corporation

**Service of Process Transmittal**
06/02/2011
CT Log Number 518615616

TO:     MARCIA MELCHIN
        Baxter Healthcare Corporation
        One Baxter Parkway
        Deerfield, IL 60015

RE:     **Process Served in California**

FOR:    Baxter Healthcare Corporation (Domestic State: DE)

RECEIVED

JUN 0 6 2011

Baxter Law Department

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | David Kaplan, Pltf. vs. Baxter Healthcare, Inc., etc., et al., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Notice, Stipulation Form and Proposed Order, Attachment(s) |
| **COURT/AGENCY:** | Los Angeles County, Superior Court, Hill Street, CA Case # SC112798 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - November 4, 2010 - In retaliation for reporting the illegal off label promotion and sale of Brevibloc |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/02/2011 at 14:50 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - File written response // September 19, 2011 at 8:45 a.m. - Case Management Conference |
| **ATTORNEY(S) / SENDER(S):** | Grant A. Carslon Friedman, Enriquez & Carlson, LLP 433 North Camden Dr. Ste. 965 Beverly Hills, Ca 90210 310-273-0777 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Priority Overnight , 794825496977 Image SOP Email Notification, MARCIA MELCHIN marcia_melchin@baxter.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

2:50 ~ 6/2/

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

BAXTER HEALTHCARE, INC., a Delaware corporation; and DOES 1
THROUGH 50, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DAVID KAPLAN

ORIGINAL FILED
LOS ANGELES SUPERIOR COURT
JOHN A. CLARKE, CLERK

MAY 3 1 2011

By: _____ DEPUTY

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California-Los Angeles

1725 Main Street, Santa Monica, CA 90401
West Judicial District

CASE NUMBER
*(Número del Caso):*

SC112798

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Friedman, Enriquez & Carlson, LLP 433 North Camden Dr., Ste. 965, Beverly Hills, CA 90210 310 273-0777

DATE:
*(Fecha)* MAY 3 1 2011     JOHN A. CLARKE     Clerk, by    J. Amezcua     , Deputy
                                              *(Secretario)*                  *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010))*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* BAXTER HEALTHCARE, INC. A DELAWARE CORPORATION

   under: ☑ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1  Grant A. Carlson, Esq., State Bar No. 155933
   Wendy K. Shiff, Esq., State Bar No. 174616
2  Friedman, Enriquez & Carlson, LLP
   433 North Camden Drive, Suite 965
3  Beverly Hills, California 90210
   Telephone (310) 273-0777
4  Fax (310) 273-1115

5  Attorneys for Plaintiff

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11  DAVID KAPLAN;                      )   Case No.  SC112798
                                       )
12               Plaintiff,            )   COMPLAINT FOR WRONGFUL
                                       )   TERMINATION IN VIOLATION OF
13  vs.                                )   PUBLIC POLICY AND INTENTIONAL
                                       )   INFLICTION OF EMOTIONAL
14  BAXTER HEALTHCARE, INC., a Delaware )  DISTRESS
    corporation; and DOES 1 THROUGH 50,)
15  Inclusive;                         )
                                       )   CASE MANAGEMENT CONFERENCE
16               Defendants.           )
                                       )   SEP 1 9 2011   8:45 AM   Dept. N
17  _____)        Date

18                    **PARTIES**        Judge C. Karlan

19     1.     Plaintiff David Kaplan is an individual who at all relevant times was and is a resident

20  of the County of Los Angeles, State of California.

21     2.     Plaintiff is informed and believes and thereon alleges that defendant Baxter

22  Healthcare, Inc. ("Baxter") is a corporation organized under the laws of the state of Delaware that

23  conducts business, manufactures and sells products throughout the world, including the County of

24  Los Angeles and State of California.  In 2008, Baxter hired plaintiff to work from his home located

25  on Wilshire Boulevard in Los Angeles, California.

26     3.     The true names and capacities, whether individual, corporate, associate or otherwise

27  of the defendants named herein a Does 1 through 50, inclusive, are unknown to plaintiff at this time,

28  who therefore sues said defendants by such fictitious names.  Plaintiff will seek leave of Court to

                                    -1-
              _____
                           COMPLAINT

1   amend this complaint to reflect the true names and capacities of such fictitiously named defendants

2   when the same have been ascertained.

3        4.    Plaintiff is informed and believes and thereupon alleges that at all times material

4   hereto each of the defendants, including defendants fictitiously named as Does 1 through 50,

5   inclusive, were and now are either the agents or principals of each of the other defendants, and of

6   each other, and in such capacity or capacities, participated in the acts and conduct alleged herein and

7   incurred liability to plaintiff therefore.

8   **FACTS COMMON TO ALL CAUSES OF ACTION**

9   **A.**    **Baxter is a Global Corporation with a Strong Presence in California**

10        5.    Plaintiff is informed and believes and thereon alleges that as stated on its website

11   (www.Baxter.com), "Baxter is a global medical products and services company with expertise in

12   medical devices, pharmaceuticals and biotechnology." Plaintiff is further informed and believes and

13   thereon alleges that as stated on its website, Baxter employs approximately 49,700 employees

14   throughout the world and has research, manufacturing, distribution and administrative facilities

15   located throughout the United States as well as Argentina, Australia/New Zealand, Austria, Belgium,

16   Brazil, Canada, Chile, China, Colombia, Costa Rica, Czech Republic, Germany, India/Southeast

17   Asia, Ireland, Italy, Japan, Malta, Mexico, North Asia, Poland, Saudi Arabia, Spain, Switzerland,

18   Tunisia, Turkey and the United Kingdom.

19        6.    Plaintiff is informed and believes and thereon alleges that as stated on its website, "in

20   2009, Baxter sales in the U.S. totaled $5.3 billion, 43 percent of a total of $12.6 billion." Baxter's

21   global headquarters are located in Deerfield, Illinois, approximately 30 miles north of Chicago. "In

22   addition to its global headquarters . . . Baxter has maintained a strong presence in the United States.

23   The 20,600 employees in the U.S. and Puerto Rico represent approximately 40 percent of Baxter's

24   total employee population worldwide. In total, Baxter operates more than 80 facilities across the

25   United States[.]"

26        7.    Plaintiff is informed and believes and thereon alleges that as stated on its website,

27   with "2,850 employees, California has the largest U.S. presence outside of Baxter's home base in

28   Northern Illinois. [Furthermore,] the majority (approximately 2,400) of Baxter employees are

-2-

COMPLAINT

located at the Los Angeles, Irvine, Thousand Oaks and Westlake Village facilities in Southern California[.]"

8.    Plaintiff is informed and believes and thereon alleges that as stated on its website Baxter employs thousands of employees at numerous locations in Arkansas, Florida, Illinois, Indiana, Mississippi, New Jersey, North Carolina and Puerto Rico.

9.    Plaintiff is informed and believes and thereon alleges that as stated on its website in 2009, "Baxter's sales in Europe, the Middle East and Africa (EMEA) were more than $4 billion. The company's EMEA region employs more than 14,700 people and is headquartered in Zurich, Switzerland."

**B.    Baxter Hires Plaintiff to Increase its Sale of Brevibloc**

10.    Plaintiff is a college graduate who has worked in field sales, training, sales operations and sales management in the biotech and pharmaceutical fields for more than two decades. By 2008, plaintiff had reached the upper management level.  On or about October 13, 2008, Baxter hired plaintiff as a National Sales Manager.  On or about February 22, 2010, Baxter promoted plaintiff to National Sales Director.  At all times, and as intended by Baxter, plaintiff worked from his home in Los Angeles, California.

11.    One of the products that Baxter sells is called Brevibloc.  Brevibloc is an IV beta-blocker that medical professionals administer before, during and after surgery to stabilize patients' blood pressure and heart rates.  The Food and Drug Administration ("FDA") has approved the use of Brevibloc by adult patients only.  Although Baxter had been selling Brevibloc for approximately ten years when it hired plaintiff, Baxter had never sold Brevibloc at its full potential. In fact, sales of Brevibloc had been declining consistently by between 2 and 4 percent over the years prior to the date Baxter hired plaintiff.

12.    Baxter had been selling Brevibloc through a dedicated sales force of approximately 120 sales representatives known within Baxter as the Inhalation Sales Reps ("IA Reps").  The IA Reps primarily sold a variety of inhaled gases, an anti-nausea medication and Brevibloc.  The IA Reps and their various regional managers lived in and serviced specific regions and marketed and sold to hospitals within their respective regions.

-3-

13.    At the time Baxter hired plaintiff it was apparent to Baxter that the IA Reps were generally more comfortable selling the inhaled gases, thereby causing the decline in Brevibloc sales. To remedy the declining sales of Brevibloc, Baxter was starting a separate dedicated sales force to promote Brevibloc sales.

**C.    Plaintiff Assembles the Critical Care Sales Force**

14.    Baxter hired plaintiff as part of its plan to promote the sale of Brevibloc. Plaintiff's job was to create a new Critical Care Sales Force ("CCSF") that would be dedicated solely to selling Brevibloc. Baxter's goal was ultimately to transfer the bulk of Brevibloc sales responsibilities from the IA Reps to the CCSF. There would, however, remain enough overlap to allow the IA Reps to continue to promote Brevibloc on those accounts CCSF did not handle.

15.    Plaintiff did not place any current Baxter employees on the CCSF. Rather, plaintiff utilized his more than twenty years of industry experience and relationships to assemble a top-notch team. The 8 members of plaintiff's CCSF lived and worked in locations across the United States, including:  Atlanta, GA; Charlotte, NC; Dallas and Houston, TX; Los Angeles, CA; Miami, FL; Philadelphia, PA; and Washington DC. The CCSF members communicated daily by phone and email and held tri-annual meetings in New York and Dallas.

**D.    Plaintiff's Critical Care Sales Force Achieves Great Success**

16.    In plaintiff's first year, the CCSF increased sales of Brevibloc by 25 percent in called-on accounts. The CCSF achieved this 25 percent increase while during the same time, the IA Reps' sales declined by 2 percent. Baxter was so pleased with the CCSF's success, it more than tripled the size of the CCSF to 28 sales representatives and 3 regional managers. Baxter also promoted plaintiff to the position of National Sales Director.

17.    In plaintiff's second year, the CCSF generated a double-digit increase in Brevibloc sales, even though plaintiff was working with what was essentially an entirely new team. While the CCSF achieved this growth, the IA Reps' sales decreased by 4 percent.

18.    In Baxter's greed for sales revenue, Baxter senior management then required that the CCSF members had to demonstrate a 45 percent growth in sales in order to receive their commissions. Baxter's senior management did not care that by placing such unrealistic demands on

-4-

the CCSF it would destroy the team members' incentive to work hard to maintain consistent results over time. Baxter's choice of greed over morality is a pervasive problem - one that ultimately led Baxter to wrongfully terminate plaintiff.

E.   **Plaintiff Discovers Baxter's Illegal, Off-Label Sale of Brevibloc**

19.    As noted above, the FDA approved Brevibloc for use only in adult patients. Indeed, the FDA package insert makes clear that it is not approved for use in children. Use of Brevibloc in adults is an "approved" use.

20.    While the FDA has not approved Brevibloc for use in children, a physician may, however, use his or her own medical judgment to decide to administer Brevibloc in connection with the treatment of a child. This would be an "off label" use.

21.    Importantly, while off label use by a physician is appropriate, it is not appropriate and is in fact illegal for Baxter to promote any off label use of a product or to pay its sales representatives commissions on off label sales. Doing so is a serious violation of federal law that could subject Baxter and its executives to monetary and/or criminal sanctions.

22.    In or about June 2009, plaintiff added Greg Giant to the CCSF. Mr. Giant lives in the greater Chicago area and had worked for Baxter for approximately 15 years prior to joining the CCSF. Mr. Giant had worked primarily as an IA Rep but had been moved to a hybrid sales and marketing role just prior to joining the CCSF.

23.    Plaintiff asked Mr. Giant to send him information about his accounts to determine their overall sales potential. When plaintiff reviewed Mr. Giant's accounts, he noticed there were one or possibly two children's hospitals in the Chicago area that were receiving Brevibloc. Furthermore, it was evident that Mr. Giant had been receiving commissions with respect to these sales of Brevibloc to the children's hospitals. That Mr. Giant had received commission payments was in and of itself evidence of off label promotion of Brevibloc to these accounts.

24.    Plaintiff was extremely concerned about the illegal payment of commissions for off label use of Brevibloc and felt he had to immediately inform Baxter senior management of this problem so that it could be remedied. Plaintiff believed that this off label promotion was an anomaly and that Baxter senior management would be eager to immediately remove these accounts and

-5-

1   prevent and further off label promotion of Brevibloc to the children's hospitals.

2   **F.    Baxter Reprimands Plaintiff for Reporting the Off-Label Sale of Brevibloc**

3       25.    Shortly after learning of Mr. Giant's sale of Brevibloc to children's hospitals, plaintiff

4   sent his superior, Marie Keeley, the Vice President of Sales for Baxter's Gas and Critical Care

5   ("GACC") Division, an email informing her of the improper payment of commissions for off label

6   use of Brevibloc.  Within the email, plaintiff stressed that any children's hospitals should be

7   immediately removed from Mr. Giant's account list.  Ms. Keeley, who lives in New Jersey,

8   responded and indicated that she understood plaintiff's request and stated that she would take care

9   of the problem. Plaintiff subsequently noticed that the children's hospital account was removed from

10  Mr. Giant's account list.

11      26.    Approximately two weeks later, plaintiff spoke with Ms. Keeley at a national sales

12  meeting in New York. Although plaintiff believed he was doing his job and should be commended

13  for recognizing a potential violation and acting quickly to remedy it, Ms. Keeley felt otherwise.  At

14  the meeting, Ms. Keeley shook her head disapprovingly and reprimanded plaintiff for reporting the

15  violation by email.  Ms. Keeley told plaintiff that now the email would be a permanent part of

16  Baxter's records and that it would be problematic if an outside entity such as the FDA were to

17  perform a search of Baxter's servers.

18      27.    Plaintiff told Ms. Keeley that he assumed the violation was an anomaly and, for that

19  reason, Baxter's quick action to remedy it should be sufficient to assure the FDA or any outside

20  governing agency that Baxter was acting diligently and in good faith. Plaintiff was alarmed by this

21  encounter, but felt that his main purpose - to properly address the problem - had been achieved.

22  **G.    One Year Later Plaintiff Learns that Off-Label Sales of Brevibloc are Pervasive**

23      28.    In or about early August 2010, plaintiff received a telephone call from Gretchen

24  Burkett, who had been a member of the CCSF since approximately February 2010.  Ms. Burkett,

25  a West Coast Regional Business Manager, lives in Malibu, California and spoke with plaintiff on

26  a weekly basis. Plaintiff was stunned when Ms. Burkett asked him "Why are the IA Reps receiving

27  commissions on sales of Brevibloc to children's hospitals?"

28  \ \ \

-6-

COMPLAINT

29.     Plaintiff responded that he was shocked by her question.  Plaintiff told Ms. Burkett that the year before he had alerted Baxter of this problem and was led to believe the problem had been handled.  Ms. Burkett told plaintiff that she had learned about the commissions from Tim O'Neil, the San Diego IA Manager.

30.     When plaintiff reviewed the San Diego IA accounts he discovered that every children's hospital in San Diego County was assigned to the IA Reps and that both the IA Reps and their managers were receiving commissions from the sales as well.  It became clear to plaintiff that for years, Baxter had pervasively promoted off label sales of Brevibloc.

**H.      Baxter Reprimands Plaintiff for His Second Report of Off-Label Sales of Brevibloc**

31.     Shortly after his conversation with Ms. Burkett, plaintiff sent an email to Ms. Keeley and the executive management teams of two different divisions advising them that the problem of off-label accounts being assigned to IA Reps had continued and that these IA Reps and their managers were being paid commissions from these accounts.  Plaintiff was very worried about these illegal sales and the fact that Baxter had apparently ignored his efforts to stop these sales the year before.

32.     Once again, however, Baxter management responded as if plaintiff -- not the illegal commissions -- were the problem.  Ms. Keeley wrote back to plaintiff by email and attempted to defend Baxter's position.  Plaintiff then replied to Ms. Keeley and to the executive management teams and provided examples of sales representatives who received commissions on off label sales. During this email exchange, plaintiff was mindful of Ms. Keeley's negative reaction to the use of email and sought to downplay the obvious reality that off label promotion of Brevibloc was occurring regularly.

33.     Approximately five minutes after plaintiff sent his last email, Scott Luce, a General Manager from the greater Chicago area, sent plaintiff an email that stated "Stop all email now." Accordingly, neither plaintiff nor any other Baxter executive sent any further emails on this issue.

\ \ \

\ \ \

\ \ \

-7-

COMPLAINT

34.    The following Monday, Mr. Luce telephoned plaintiff and asked him to apologize to Ms. Keeley for highlighting this issue via corporate email.  Mr. Luce said, "Man, what were you thinking? You put 'off label' and 'commission pay-outs' on our server.  Bob Davis [a General Manager in New Jersey] and Marie [Keeley] are furious with you!"

35.    At this time, plaintiff finally realized that Baxter's senior executives had little concern about whether Baxter was acting legally but were more concerned about sales revenue and "covering their tracks." Plaintiff realized that his time with Baxter would be short and that he would likely be terminated soon.

**I.    One Month Later Baxter Terminates Plaintiff Based for a Pretextual Reason**

36.    Approximately two weeks after plaintiff's second report of improper promotion and off-label sales of Brevibloc, Baxter assigned plaintiff an "executive coach."  An executive coach is an outside consultant familiar with a company or industry who is hired by the company to help an individual "fit in" and communicate more effectively within a company culture.  Typically, an executive coach is hired when an executive his having difficulty working smoothly within the executive team.

37.    Here, plaintiff was not the typical employee who required an executive coach.  He had been working for Baxter for more than two years, he had assembled and grown the CCSF, and had increased the sales of Brevibloc at a fantastic rate.  Plaintiff had worked and communicated smoothly and efficiently with the CCSF and the senior executives.  There had never been any problem with plaintiff's performance or communication and plaintiff had never been reprimanded for anything (other than reporting off label commissions for Brevibloc).

38.    It was clear to plaintiff that Baxter hired the executive coach solely to prevent plaintiff from reporting the off label sales of Brevibloc and to stop voicing his concerns by email.  Although the senior executives told plaintiff they were hiring the executive coach because he was a valuable team member and they wanted him to continue at Baxter, it was also clear to plaintiff that hiring the executive coach was simply a step toward firing him based on a pretextual reason.

39.    On or about November 4, 2010, plaintiff met with Megan Finnigan, a Human Resources Manager from Baxter's headquarters in Deerfield, Illinois.  At the meeting, plaintiff was

-8-

told that his job was in jeopardy because of some private emails he had exchanged with certain members of the CCSF two years earlier. These emails consisted of typical company venting between co-workers, akin to what might be said over a cup of coffee during a break at Starbucks. The emails did not contain any sensitive or confidential company information.

40.    At this meeting, Ms. Finnigan, cited an obscure policy regarding the use of email for private communications. Although Ms. Finnigan indicated that the policy was explained somewhere within the mountain of initial employment documentation, plaintiff had never seen or been told about this policy either before or during his employment and he had never been told to advise the individuals he hired of the policy. In fact, to plaintiff's knowledge, no one at Baxter observed this alleged policy. Despite these facts Baxter terminated plaintiff as of November 4, 2010. It is ironic that Baxter immediately reprimanded plaintiff twice for reporting serious work-related violations by email and then turned around and fired him two years after the fact for making personal comments to his colleagues by email.

41.    Within 24 hours after terminating plaintiff, Baxter flew the three CCSF regional managers who reported to plaintiff to its headquarters in Deerfield, Illinois. Gretchen Burkett from California, along with Bill Muldowney from Pennsylvania and Doug Pennington from Texas were put in separate conference rooms to discuss the situation. Each was told how valuable they were to Baxter and each was given a retention bonus to keep them from leaving Baxter. These regional managers were told that the decision to terminate plaintiff was a "difficult" one that had nothing to do with any performance issues.

42.    None of the three regional managers was given any reason for plaintiff's termination. And, importantly, none of these regional managers was told about the alleged policy regarding private emails, even though these three individuals were some of the colleagues with whom plaintiff had exchanged the private emails. Indeed, no one at Baxter even raised the issue as an aside or as a warning to prevent any further "infractions."

43.    To recap, therefore, even though plaintiff and all three regional managers violated the alleged policy two years earlier, Baxter, however, only terminated plaintiff -- the only person who recently reported the off label promotion of Brevibloc. Moreover, Baxter never even told the

-9-

1  regional managers about their alleged violation of this policy or ever mentioned the alleged policy

2  at all. This conduct demonstrates that Baxter was never concerned about the alleged email policy.

3  Rather, Baxter merely raised the alleged policy as a pretext to fire plaintiff in retaliation for reporting

4  Baxter's illegal conduct.

**FIRST CAUSE OF ACTION**

**(Wrongful Termination in Violation of Public Policy)**

**(Against all Defendants)**

8      44.    Plaintiff incorporates and realleges herein paragraphs 1 through 43 as if set forth fully

9  herein.

10     45.    On or about November 4, 2010, after reprimanding plaintiff for reporting the illegal

11  off label promotion and sale of Brevibloc for use in children and in violation of public policy,

12  defendants wrongfully terminated plaintiff from his employment with Baxter.

13     46.    Defendants reprimanded and ultimately terminated plaintiff for reporting the illegal

14  off label promotion and sale of Brevibloc for use in children and not for the manufactured, pretextual

15  reason they claim.

16     47.    Defendants' termination of plaintiff violates fundamental public policy for at least two

17  reasons. First, it violates the fundamental public policy against the promotion and sale of drugs and

18  pharmaceutical products for off label or unapproved uses under federal law and embodied, *inter alia*,

19  in the United States Code and the Code of Federal Regulations. *See e.g.* 21 U.S.C. § 331; 21 C.F.R.

20  §§ 99.1 *et seq.* and 21 C.F.R. §§ 300 *et seq.*   Second, it violates the fundamental public policy

21  against retaliation by an employer against an employee who refuses to engage in or otherwise reports

22  illegal conduct under California law. *See e.g.* Cal. Labor Code §§ 1102.5, 2922 and 6310. *See also*

23  *Tameny v. Atlantic Richfield*, Co., 27 Cal. 3d 167, 172-74 (1980).

24     48.    Defendants' termination of plaintiff directly and proximately caused plaintiff to suffer

25  damages in an amount according to proof at trial, including but not limited to, statutory damages,

26  lost wages and other benefits, emotional distress and pain and suffering.

27  \ \ \

28  \ \ \

-10-

COMPLAINT

49.     Defendants' termination of plaintiff was malicious and oppressive within the parameters of Cal. Civ. Code § 3294, and was instigated, encouraged, ratified and condoned by a managing agent, thereby justifying the imposition of punitive damages against defendants.

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### (Against all Defendants)

50.     Plaintiff incorporates and realleges herein paragraphs 1 through 43 as if set forth fully herein.

51.     As set forth fully above, while employed by Baxter, plaintiff reported the off label promotion and sale of Brevibloc for use in children.  Defendants reprimanded and ultimately terminated plaintiff in retaliation for reporting this illegal conduct.  Defendants did not terminate plaintiff for the manufactured, pretextual reason they claim.

52.     Defendants' retaliatory conduct for plaintiff's reporting the illegal off label promotion and sale of Brevibloc for use in children was outrageous and beyond all bounds of human decency.

53.     By engaging in this retaliatory conduct, defendants intended to cause plaintiff to suffer emotional distress or in the alternative, defendants acted with reckless disregard of the probability that plaintiff would suffer emotional distress when they reprimanded and terminated him for reporting the off label promotion and sale of Brevibloc for use in children.

54.     Defendants' retaliatory conduct for plaintiff's reporting the illegal off label promotion and sale of Brevibloc was a substantial factor in and, in fact, directly and proximately caused plaintiff to suffer great stress and severe emotional and psychological distress both during and after his employment by Baxter, in an amount to be proven at trial.

55.     Defendants' retaliatory conduct was malicious and oppressive within the parameters of Cal. Civ. Code § 3294, thereby justifying the imposition of punitive damages against defendants.

WHEREFORE, plaintiff prays for judgment against defendants as follows:

### For All Causes of Action:

1.     General damages in a sum according to proof, but no less than the jurisdictional minimum of this Court;

-11-

COMPLAINT

2.   Special damages, in a sum according to proof;

3.   Punitive damages, pursuant to Cal. Civ. Code § 3294;

4.   Costs of suit incurred;

5.   Attorney's fees incurred in the prosecution of this action; and

6.   For such other and further relief as is just and proper.

Friedman, Enriquez & Carlson, LLP

By: _____

Grant A. Carlson, Esq.
Attorneys for Plaintiff

-12-

COMPLAINT

CASE NO. _____ SC112798

## *NOTICE OF CASE ASSIGNMENT TO INDIVIDUAL CALENDAR COURT*

**TO PLAINTIFFS AND PLAINTIFFS' ATTORNEYS OF RECORD or PLAINTIFFS IN PRO PER:**

**IT IS HEREBY ORDERED AND YOU ARE HEREBY NOTIFIED** that this action shall be assigned to a Judge for all purposes, including trial, as follows:

Judge C. Karlan

Department: N

☒ Santa Monica Courthouse
1725 Main Street
Santa Monica, CA 90401

☐ Judge Richard A. Stone
Beverly Hills Courthouse
Department WE-X
9355 Burton Way
Beverly Hills, CA 90210

**IT IS FURTHER ORDERED THAT PLAINTIFF OR COUNSEL FOR PLAINTIFF SHALL GIVE NOTICE OF THIS ALL-PURPOSE CASE ASSIGNMENT** by serving a copy of this Notice on all parties to this action at the time the Summons and Complaint are served, or, if not a served party, then when such party (including any cross-defendant or complainant-in-intervention) appears in the action.

**CASE MANAGEMENT REVIEW AND CONFERENCE:** Upon the filing of the Complaint, a Case Management Review and Conference will be calendared for hearing in the Court to which the case is assigned. The hearing date will be stamped upon the face of the Complaint. Plaintiff shall give notice of the Case Management Review and Conference to all named parties in conjunction with service of the Summons and Complaint and include any later appearing party such as a cross-defendant or complainant-in-intervention served within this time period. Proof of service must be brought to the hearing if not previously filed. Failure to timely file proof of service of Summons and Complaint within 60 days after filing the Complaint (CRC 3.110) may result in an Order to Show Cause re sanctions being issued. (CRC 3.110(f).)

If a case is assigned to Department X, located in the Beverly Hills Courthouse, all documents, pleadings, motions, and papers filed subsequent to the original Complaint shall be filed directly in the courtroom stamped upon the Complaint.

-1-

Pursuant to CRC 3.725, no later than 15 calendar days before the date set for the Case Management Conference or Review, each party must file a Case Management Statement and serve it on all other parties in the case. In lieu of each party's filing a separate Case Management Statement, any two or more parties may file a joint Statement.

The subjects to be considered at the Case Management Conference shall include the following (CRC Rule 3.727):

(1)    Whether there are any related cases;

(2)    Whether all parties named in the Complaint or Cross-Complaint have been served, have appeared, or have been dismissed;

(3)    Whether any additional parties may be added or the pleadings may be amended;

(4)    Whether, if the case is a limited civil case, the economic litigation procedures under Code of Civil Procedure Section 90 et seq. will apply to it or the party intends to bring a motion to exempt the case from these procedures;

(5)    Whether any other matters (e.g., the bankruptcy of a party) may affect the Court's jurisdiction or processing of the case;

(6)    Whether the parties have stipulated to, or the case should be referred to, judicial arbitration in courts having a judicial arbitration program or to any other form of alternative dispute resolution (ADR) process and, if so, the date by which the judicial arbitration or other ADR process must be completed;

(7)    Whether an early settlement conference should be scheduled and, if so, on what date;

(8)    Whether discovery has been completed and, if not, the date by which it will be completed;

(9)    What discovery issues are anticipated;

(10)   Whether the case should be bifurcated or a hearing should be set for a motion to bifurcate under Code of Civil Procedure Section 598;

(11)   Whether there are any Cross-Complaints that are not ready to be set for trial and, if so, whether they should be severed;

(12)   Whether the case is entitled to any statutory preference and, if so, the statute granting the preference;

(13)   Whether a jury trial is demanded and, if so, the identity of each party requesting a jury trial;

| NAME, ADDRESS AND PHONE NUMBER OF ATTORNEYS | FILE STAMP |
|---|---|

Attorney(s) for:

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | CASE NUMBER |
|---|---|
| PLAINTIFF(S). | |
| vs. | STIPULATION AND ORDER RE BINDING ARBITRATION |
| DEFENDANT(S). | Status Conference Date: At_____ a.m. in Department_____ . |

THE PARTIES SHOULD CONSIDER BINDING ARBITRATION. BINDING ARBITRATION PROVIDES FINALITY AND ELIMINATES COURT APPEARANCES. THE ARBITRATION IS PROVIDED AT NO COST TO THE PARTIES. IF THIS STIPULATION IS SIGNED AND FILED DIRECTLY IN THE ABOVE DEPARTMENT, FIVE COURT DAYS PRIOR TO THE DATE SET FOR THE STATUS CONFERENCE, NO APPEARANCE IS REQUIRED AT THE STATUS CONFERENCE.

The parties and their attorneys, hereby stipulate as follows:

1. The matter shall be submitted to binding arbitration and the parties waive their right to a trial de novo as provided in California Code of Civil Procedure, Section 1141.20.

2. _____, a member of The Superior Court Arbitration panel, shall serve as arbitrator.

3. All cross complaints have been filed.

4. All fictitious and named defendants/cross-defendants who have not filed an answer are dismissed.

5. The court retains jurisdiction over motions to enforce the arbitration award and other post-arbitration motions.

Executed this_____ day of_____ , 20__ .

_____          _____
Plaintiff                                                 Attorney for Plaintifff

_____          _____
Defendant                                              Attorney for Defendant

## ORDER

It is so ordered:

DATE:_____          JUDGE _____

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (**Civil only**).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

> **Cases for Which Mediation May Be Appropriate**
> Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

> **Cases for Which Mediation May Not Be Appropriate**
> Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> **Cases for Which Arbitration May Be Appropriate**
> Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

> **Cases for Which Arbitration May Not Be Appropriate**
> If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

> **Cases for Which Neutral Evaluation May Be Appropriate**
> Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

> **Cases for Which Neutral Evaluation May Not Be Appropriate**
> Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

# Exhibit "B"

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 2 9 2011

John A. Clarke, Executive Officer/Clerk

By D: ~~McKinney Penny~~

1   SEYFARTH SHAW LLP
Jon D. Meer (SBN 144389)
2   E-mail: jmeer@seyfarth.com
Jonathan L. Brophy (SBN 245223)
3   E-mail: jbrophy@seyfarth.com
2029 Century Park East, Suite 3500
4   Los Angeles, California 90067-3021
Telephone: (310) 277-7200
5   Facsimile: (310) 201-5219

6   Attorneys for Defendant
BAXTER HEALTHCARE CORPORATION
7   (erroneously sued as BAXTER
HEALTHCARE, INC.)

8                    SUPERIOR COURT OF CALIFORNIA

9                       COUNTY OF LOS ANGELES

10

DAVID KAPLAN                          )   Case No. SC112798
11                                        )
              Plaintiff,              )   **DEFENDANT BAXTER HEALTHCARE**
12                                        )   **CORPORATION'S ANSWER TO**
         v.                              )   **PLAINTIFF'S UNVERIFIED**
13                                        )   **COMPLAINT**
BAXTER HEALTHCARE, INC., a Delaware  )
14   corporation; and DOES 1 THROUGH 50,  )   Judge:      Hon. Craig D. Karlan
Inclusive;                           )   Dept.:      N
15                                        )
              Defendants.            )   Complaint Filed:    May 31, 2011
16                                        )

17

18

19

20

21

22

23

24

25

26

27

28

**TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD:**

Defendant BAXTER HEALTHCARE CORPORATION ("Defendant"), erroneously sued as BAXTER HEALTHCARE, INC., hereby answers the Unverified Complaint of DAVID KAPLAN ("Plaintiff") as follows:

Pursuant to the provisions of California *Code of Civil Procedure* § 431.30(d), Defendant denies, generally and specifically, each and every allegation, statement, matter and each purported cause of action contained in the Complaint, and without limiting the generality of the foregoing, denies, generally and specifically, that Plaintiff has been damaged in the manner or sums alleged, or in any way at all, by reason of any acts or omissions of Defendant.

Defendant answers only on behalf of itself and asserts the affirmative defenses herein.

## AFFIRMATIVE DEFENSES

In further answer to the COMPLAINT, and as separate and distinct affirmative defenses, Defendant alleges the following defenses. In asserting these defenses, Defendant does not assume the burden of proof as to matters that, pursuant to law, are Plaintiff's burden to prove.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action Upon Which Relief Can Be Granted)

1.      Plaintiff's Complaint, and each purported cause of action contained therein, fails to state facts sufficient to constitute any cause of action and fails to state a claim upon which any relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

2.      Plaintiff's Complaint, and each purported cause of action contained therein, are barred by the applicable statute of limitations. Cal. Civ. Proc. Code §§ 337(1), 338 (b), (c), and (d); 340.

13500102v.2

## THIRD AFFIRMATIVE DEFENSE

### (Failure to State Sufficient Facts to Constitute A Cause of Action)

3.     Plaintiff's Complaint, and each purported cause of action contained therein, fails to state claims upon which relief can be granted because California law precludes Plaintiff from bringing tort claims arising out of the employment relationship.

## FOURTH AFFIRMATIVE DEFENSE

### (Workers' Compensation Exclusivity)

4.     Plaintiff's Complaint, and each allegation contained therein, is barred, in whole or in part, to the extent Plaintiff seeks recovery for alleged physical or emotional injuries, based on exclusive remedies available under the applicable provisions of the California Workers' Compensation Act, Cal. Labor Code §§ 3600 *et seq.*, which preempts such claims.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Plead Facts Supporting a Claim of Emotional Distress)

5.     Any claim for alleged emotional or mental distress or suffering, discomfort, humiliation and embarrassment should be stricken from Plaintiff's COMPLAINT because Plaintiff has failed to plead with particularity any facts supporting such a claim, as required by law.

## SIXTH AFFIRMATIVE DEFENSE

### (Collateral Source)

6.     Plaintiff's Complaint, and each allegation contained therein, is barred to the extent that Plaintiff has not alleged any tangible or medical evidence of emotional distress, pain, anxiety or suffering as a result of any conduct alleged in the COMPLAINT. Alternatively, to the extent that any alleged emotional distress, pain, or anxiety was suffered, it was caused by a collateral source other than the conduct of Defendant.

## SEVENTH AFFIRMATIVE DEFENSE

### (At-Will Employment)

7.     Plaintiff's Complaint, and all causes of action contained therein, is barred to the extent that Plaintiff was an at-will employee, and his terms and conditions of employment could

2

1   be modified or changed at any time, with or without notice, and with or without cause, as

2   provided under section 2922 of the California Labor Code.  Similarly, Plaintiff's employment

3   could be terminated at any time with or without notice, and with or without cause, as provided

4   under section 2922 of the California Labor Code.

### EIGHTH AFFIRMATIVE DEFENSE

### (Good Cause)

7       8.      Plaintiff's Complaint, and each purported cause of action contained therein, fails

8   to state claims upon which relief can be granted because any decisions made with respect to

9   Plaintiff's employment were based upon good cause.

### NINTH AFFIRMATIVE DEFENSE

### (Good Faith)

12      9.      Plaintiff's Complaint, and each purported cause of action contained therein, is

13  barred in whole or in part because Defendant had an honest, reasonable, and good-faith belief in

14  the facts on which it based any acts, omissions, and/or conduct taken with respect to Plaintiff.

### TENTH AFFIRMATIVE DEFENSE

### (No Violation of Public Policy)

17      10.     Plaintiff's Complaint, and each purported cause of action contained therein, are

18  barred to the extent that Plaintiff's allegations of violation of public policy do not identify a

19  fundamental public policy based on a constitutional, statutory or regulatory provision applicable

20  to Defendant.

### ELEVENTH AFFIRMATIVE DEFENSE

### (No Protected Activity)

23      11.     Plaintiff's Complaint, and each purported cause of action contained therein, are

24  barred to the extent that Plaintiff's allegations of wrongful termination are not based upon any

25  protected activity undertaken by Plaintiff.

3

13500102v.2

### TWELFTH AFFIRMATIVE DEFENSE

#### (Equal Dignities)

12.     Plaintiff's Complaint, and each purported cause of action contained therein, are barred by the equal dignities rule.

### THIRTEENTH AFFIRMATIVE DEFENSE

#### (Plaintiff's Negligence)

13.     Plaintiff's Complaint, and each purported cause of action contained therein, fails to state claims upon which relief can be granted because Plaintiff is guilty of a culpable degree of negligence and is therefore liable to his employer for the damage caused to his employer.  Cal. Lab. Code § 2865.

### FOURTEENTH AFFIRMATIVE DEFENSE

#### (Failure to Conform to Usage of Place of Performance)

14.     Plaintiff's Complaint, and each purported cause of action contained therein, fails to state claims upon which relief can be granted because Plaintiff failed to perform his services in conformity to the usage of the place.  Cal. Lab. Code § 2857.

### FIFTEENTH AFFIRMATIVE DEFENSE

#### (Degree of Skill and Failure to Use Skill Possessed)

15.     Plaintiff's Complaint, and each purported cause of action contained therein, fails to state claims upon which relief can be granted because Plaintiff failed to use ordinary care and diligence in the performance of his employment.  Cal. Lab. Code §§ 2858, 2859.

### SIXTEENTH AFFIRMATIVE DEFENSE

#### (Plaintiff's Willful Breach)

16.     Plaintiff's Complaint, and each purported cause of action contained therein, fails to state claims upon which relief can be granted because Plaintiff willfully breached his duties as an employee, habitually neglected his duties, and/or failed to perform his duties.  Cal. Lab. Code § 2924.

13500102v.2

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Failure to Comply with Employer's Directions)

17.     Plaintiff's Complaint, and each purported cause of action contained therein, is barred in whole or in part because Plaintiff failed to substantially comply with all the directions of his employer and its agents, representatives, employees, and/or supervisors concerning the services upon which he was engaged, and such obedience was neither impossible, nor unlawful, and did not impose new and/or unreasonable burdens upon Plaintiff.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Plaintiff's Conduct on the Job)

18.     Plaintiff's Complaint, and each cause of action contained therein, is barred to the extent that any act, decision or conduct taken toward Plaintiff was based on Plaintiff's conduct on the job.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Statute of Frauds)

19.     Plaintiff's Complaint, and each purported cause of action contained therein, fails to state claims upon which relief can be granted because Plaintiff's claims are barred by the statute of frauds.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Laches)

20.     Plaintiff's Complaint, and each purported cause of action contained therein, are barred under the doctrine of laches.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Waiver)

21.     Plaintiff, by reason of his conduct and actions, has waived the right, if any, to assert the claims in the Complaint and all purported causes of action contained therein.

13500102v.2

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Estoppel)

22.     Plaintiff is estopped by his own actions and course of conduct from pursuing the claims of the Complaint and all purported causes of action contained therein.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands)

23.     Plaintiff's Complaint, and each purported cause of action contained therein, are barred under the doctrine of unclean hands.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Lack of Proximate Cause and Failure to Exercise Ordinary Care)

24.     If Plaintiff sustained any loss, injury, damage or detriment as alleged in the Complaint, the loss, injury, damage or detriment was caused and contributed to by Plaintiff's own actions in that he did not exercise ordinary care on his own behalf and in the performance of his employment at the times and places alleged in the Complaint, and Plaintiff's actions and omissions proximately contributed to the loss, injury and detriment alleged by Plaintiff, therefore Plaintiff's recovery, if any, should be reduced in proportion to the percentage of Plaintiff's negligence or in proportion to his fault.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

25.     Plaintiff has failed to mitigate or reasonably attempt to mitigate his damages as required by law.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Failure to Plead Facts Sufficient to Support Punitive Damages)

26.     Plaintiff is not entitled to recover punitive or exemplary damages herein, and any allegations with respect thereto should be stricken because Plaintiff has failed to plead and/or prove Facts sufficient to support allegations of malice, oppression, or fraud.  Cal. Civ. Code § 3294.

6

13500102v.2

1

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

2

### (No Liability for Punitive Damages)

3    27.    Defendant is not liable for punitive damages because neither Defendant nor any of

4    its officers, directors, or managing agents committed any alleged oppressive, willful, fraudulent,

5    or malicious acts, authorized or ratified such alleged acts, or had advanced knowledge of the

6    unfitness of any employee or employees who allegedly committed such an act, or employed any

7    such employee or employees with a conscious disregard of the rights or safety of others. Cal.

8    Civ. Code § 3294 (b).

9

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

10

### (Mixed Motive)

11    28.    Plaintiff's claims are barred, or he is precluded from recovering damages, to the

12    extent that if Defendant's actions, which are the subject of plaintiff's claim, were actually

13    motivated by both lawful and unlawful reasons (which Defendant denies), Defendant's

14    legitimate reasons, standing alone, would have induced it to make the same decision it reached.

15

## TWENTY-NINTH AFFIRMATIVE DEFENSE

16

### (After-Acquired Evidence)

17    29.    Plaintiff's claims are barred, or he is precluded from recovering damages, to the

18    extent that Defendant learns through after-acquired evidence that Plaintiff engaged in any fraud

19    or other misconduct that, if known, would have caused him to be terminated.

20

## THIRTIETH AFFIRMATIVE DEFENSE

21

### (Privilege)

22    30.    Defendant asserts that any and all acts alleged to have been committed by

23    Defendant or Defendant's agents were absolutely or qualifiedly privileged.

24

## THIRTY-FIRST AFFIRMATIVE DEFENSE

25

### (Reservation of Rights)

26    31.    Plaintiff's Complaint for Damages and each cause of action contained therein is

27    plead in a conclusory and vague manner, thereby making it impossible for Defendant to fully

28    anticipate all defenses that may be available with respect to each of Plaintiff's claims.

7

13500102v.2

1    Accordingly, Defendant reserves the right to add additional affirmative defenses that are

2    applicable to this matter, at a subsequent time in the case.

3                                    **PRAYER**

4         WHEREFORE, Defendant prays for judgment as follows:

5         1.      That Complaint, and each purported cause of action contained therein, be

6    dismissed with prejudice, and that judgment be entered for Defendant;

7         2.      That Plaintiff take nothing;

8         3.      That Defendant be awarded its costs of suit herein; and

9         4.      That Defendant be awarded such other and further relief as the court may deem

10   just and proper.

11

12   DATED: June 29, 2011                          SEYFARTH SHAW LLP

13

14                                                 By
                                                     Jon D. Meer
15                                                   Jonathan L. Brophy
                                                   Attorneys for Defendant
16                                                 BAXTER HEALTHCARE CORPORATION

17

18

19

20

21

22

23

24

25

26

27

28

8

DEFENDANT BHC'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

13500102v.2

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA )
                              )   ss
3      COUNTY OF LOS ANGELES )

4          I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 2029 Century Park East, Suite 3500, Los Angeles,
5      California 90067-3021. On June 29, 2011, I served the within documents:

6                    **DEFENDANT BAXTER HEALTHCARE CORPORATION'S ANSWER TO**
                              **PLAINTIFF'S UNVERIFIED COMPLAINT**
7
       ☐   I sent such document from facsimile machine (310) 201-5219 on June 29, 2011. I
8          certify that said transmission was completed and that all pages were received and that a
           report was generated by facsimile machine (310) 201-5219 which confirms said
9          transmission and receipt. I, thereafter, mailed a copy to the interested party(ies) in this
           action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the
10         parties listed below.

11     ☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully
           prepaid, in the United States mail at Los Angeles, addressed as set forth below.

12     ☐   by personally delivering the document(s) listed above to the person(s) at the address(es)
           set forth below.
13
       ☐   by placing the document(s) listed above, together with an unsigned copy of this
14         declaration, in a sealed Federal Express.envelope with postage paid on account and
           deposited with Federal Express at Los Angeles, California, addressed as set forth below.
15
       ☐   by transmitting the document(s) listed above, electronically, via the e-mail addresses set
16         forth below.

17     Grant A. Carlson, Esq.
       Wendy K. Shiff, Esq.
18     FRIEDMAN, ENRIQUEZ & CARLSON, LLP
       433 North Camden Drive, Suite 965
19     Beverly Hills, CA 90210
       Telephone: (310) 273-0777
20     Facsimile: (310) 273-1115

21         I am readily familiar with the firm's practice of collection and processing correspondence
       for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
22     day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
       motion of the party served, service is presumed invalid if postal cancellation date or postage
23     meter date is more than one day after the date of deposit for mailing in affidavit.

24         I declare under penalty of perjury under the laws of the State of California that the above
       is true and correct.
25
           Executed on June 29, 2011, at Los Angeles, California.
26

27                                                          _____
                                                                    Patricia E. Haden
28

                                                    1
                                          PROOF OF SERVICE

13500102v.2

# Exhibit "C"

Westlaw

48 Trials Digest 9th 13                                                                                       Page 1

48 Trials Digest 9th 13 (Cal.Superior), 2004 WL 5066208
For Dockets See BC278495

Copyright (c) 2011 Thomson Reuters/West

Superior Court, Los Angeles County, California.

Perez vs. Lake Avenue Congregational Church of Pasadena

TOPIC:
Synopsis: Schoolteacher alleges retaliatory termination for whistleblowing
Case Type: Labor & Employment; **Whistleblower**; Labor & Employment; Termination/Constructive Discharge;
Labor & Employment; Violation of Public Policy; Defamation; Slander; Contracts; Breach; Labor & Employment;
Breach of Contract

DOCKET NUMBER: BC278495

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: February 5, 2004

JUDGE: Soussan G. Bruguera

ATTORNEYS:
Plaintiff: Donald Conway, Shegerian & Associates Inc., Beverly Hills.;  N. Nick Ebrahimian, Shegerian & Associ-
ates Inc., Beverly Hills.; Alfred Hakim, Law Offices of Alfred Hakim, Los Angeles.; Carney R. Shegerian,
Shegerian & Associates Inc., Beverly Hills.
Defendant: Steven R. Bangerter, Cooksey, Toolen, Gage, Duffy & Woog, Costa Mesa.; Todd A. James, Cooksey,
Toolen, Gage, Duffy & Woog, Costa Mesa.

SUMMARY:
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $970,001

Range: $500,000-$999,999

 **Wrongful termination**: $120,000 economic; $350,000 non-economic. Defamation: $1 past economic; $125,000
future economic; $250,000 past non-economic; $125,000 future non-economic.
Trial Type: Jury
Trial Length: Not reported.
Deliberations: Not reported.
Jury Poll: Not reported.

EXPERTS:

Plaintiff: Not reported.
Defendant: Not reported.

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to Defendant: Plaintiff Deborah Perez worked for defendants Lake Avenue Congregational Church of Pasadena dba Lake Avenue Church School and Kohar Jarlekian as a teacher of minor children for four years. She alleged that defendants unlawfully terminated her employment in response to her making complaints to both defendants and the state government about the illegally high number of students being enrolled in her classroom by defendants. Plaintiff alleged that the teacher-to-student ratio was too high as a result of defendants' financial motivations. Plaintiff further alleged that her complaints about safety problems at defendants' facility were another illegal motivating factor in the termination of her employment. Plaintiff further alleged that defendants defamed her by speaking falsely and negatively about her work performance and skills and breached their implied and express employment contract with her.
Defendants denied all of plaintiff's allegations. Defendants denied that any actions on their part were taken illegally and alleged that plaintiff was fired from her job because of poor work performance.

CLAIMED INJURIES
According to Defendant: **Emotional distress**.

CLAIMED DAMAGES
According to Defendant: Not reported.

SETTLEMENT DISCUSSIONS
According to Defendant: Not reported.

Trials Digest, A Thomson/West business

Los Angeles County Superior Court/Downtown

48 Trials Digest 9th 13 (Cal.Superior), 2004 WL 5066208

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

2009 WL 4069942                                                                                    Page 1

2009 WL 4069942 (Cal.Superior)
For Opinion See 2009 WL 6411755 (Trial Order), 2009 WL 2000640 (Trial Order), 2009 WL 2000641 (Trial Order)

Copyright (c) 2011 ALM Media Properties, LLC. All Rights Reserved

Superior Court, Los Angeles County, California.

Gregg Levin v. Canon Business Solutions Inc., Canon U.S.A. Inc., Jack Ketchum, John Focarino, Rolando Nuestro and Michael Cerame

No. BC390728

DATE OF VERDICT/SETTLEMENT: November 06, 2009

TOPIC: EMPLOYMENT - **WRONGFUL TERMINATION** - INTENTIONAL TORTS - FALSE IMPRISONMENT - PRIVACY - INVASION OF PRIVACY - INTENTIONAL TORTS - **INTENTIONAL INFLICTION** OF **EMOTIONAL DISTRESS** - NEGLIGENCE - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
Fired Employee Sued Company for False Imprisonment, Distress

SUMMARY:
RESULT: Verdict-Plaintiff
Award Total: $207,235
The jury found in favor of Levin against Cerame, Solutions and CUSA on the claims for false imprisonment, invasion of privacy and **intentional infliction** of **emotional distress**.
Judgment was entered against Solutions and CUSA in the amount of $1,810.25 each on the causes of action for false imprisonment and invasion of privacy, and against Cerame for the total of $3,614.50 on the same claims.

EXPERT WITNESSES:
Plaintiff: Anthony E. Reading, Ph.D.; Psychology/Counseling; Beverly Hills, CA Richard B. Danehy; Human Resources Policies; Santa Barbara, CA
Defendant: Francine Kulick, Ph.D.; Psychological Injuries; Santa Monica, CA

ATTORNEYS:
Plaintiff: Martin D. Singer; Lavely & Singer; Los Angeles, CA (Gregg Levin); William J. Briggs; Lavely & Singer, PC; Los Angeles, CA (Gregg Levin); Todd S. Eagan; Lavely & Singer, PC; Los Angeles, CA (Gregg Levin)
Defendant: Joseph W. Hammell; Dorsey & Whitney, LLP; Minneapolis, MN (Canon Business Solutions Inc., Canon U.S.A. Inc., Jack Ketchum, John Focarino, Rolando Nuestro); Nicole Haaning; Dorsey & Whitney, LLP; Minneapolis, MN (Canon Business Solutions Inc., Canon U.S.A. Inc., Jack Ketchum, John Focarino, Rolando Nuestro); Jessica Linehan; Dorsey & Whitney, LLP; Minneapolis, MN (Canon Business Solutions Inc., Canon Business Solutions Inc., Canon U.S.A. Inc., Canon U.S.A. Inc., Jack Ketchum, Jack Ketchum, John Focarino, John Focarino, Rolando Nuestro, Rolando Nuestro); Caroline L. Dasovich; Caroline L. Dasovich & Associates; El Segundo, CA (Michael Cerame)

JUDGE: Michael L. Stern

RANGE AMOUNT: $200,000-499,999

STATE: California
COUNTY: Los Angeles

INJURIES: Levin sought unspecified monetary damages for emotional distress, which he claimed was intentional on the part of the defendants, via accusations, threats, false imprisonment and invasion of privacy.

Facts:

On or around March 21, 2008, plaintiff Gregg Levin, 45, was terminated from his color copy service technician position at Canon Business Solutions Inc.

On March 17, Levin was called to meet with company managers, two internal auditors and private security consultant Michael Cerame at the Solutions office in Calabasas.

According to Levin, Cerame demanded to be taken to the plaintiff's home. Levin initially refused, but then complied when Cerame threatened him with termination and embezzlement charges.

Levin claimed that once they arrived at his home, the men raided his house and garage, and that one Solutions employee looked through his children's room for company property. Levin claimed that the men left his home after he called the police. A few days later, he was out of a job.

Levin sued Solutions, parent company Canon USA Inc. (CUSA) and Cerame, as well as Solutions employees Jack Ketchum, John Focarino and Rolando Nuestro. He alleged **wrongful termination** in violation of public policy, false imprisonment, invasion of privacy, violation of the Bane Civil Rights Act, defamation, tortious interference with prospective economic advantage and intentional and negligent infliction of emotional distress.

The plaintiff claimed that he regularly stored company property at his home with his employer's permission. He alleged that the company soon began to threaten him with criminal charges if he didn't confess to stealing the property.

Levin alleged that Solutions wrongfully terminated him in **retaliation** for calling the police. He further alleged false imprisonment for being forced to ride in the same car as Cerame to his home, where the alleged raid took place. He then claimed that Cerame and the three employees unlawfully searched his home, an invasion of privacy.

The defense responded that Solutions received a tip from Levin's ex-wife that he was stealing company property, storing it in his garage, selling it and/or using it for his own copy-repair business. Based on this information, the company hired Cerame to investigate the matter.

The defense also claimed that Levin voluntarily agreed to enter Cerame's car and allow the defendants to enter and search his garage. The defendants further claimed that they only searched his garage, and that Levin himself requested that another Solutions employee walk through his house with him to verify that there was no company property inside.

On summary judgment prior to trial, the court dismissed the plaintiff's **wrongful termination**, Bane Civil Rights Act and negligent infliction of emotional distress claims. During trial, the plaintiff's claims for defamation and tortious interference and all claims against Nuestro were dismissed.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

The defense filed a cross-complaint against Levin for various claims, including conversion, interference with contractual relations and prospective economic advantage, fraud, breach of contract and breach of various labor code provisions.

The defense denied that Levin was entitled to damages for emotional distress.

On the cross-complaint, Solutions sought damages, including wages paid to Levin while he was allegedly stealing from the company.

On the claim for **intentional infliction** of **emotional distress**, judgment was entered against Solutions in the amount of $50,000 and against CUSA for $150,000.

Levin's final award was $207,235, including costs.

The jury found in favor of Solutions employees Ketchum and Focarino on all claims, and also awarded Solutions $1,840 against Levin on its cross-complaint.

ALM Properties, Inc.

Superior Court of Los Angeles County, Central

PUBLISHED IN: VerdictSearch California Reporter Vol. 8, Issue 46

2009 WL 4069942 (Cal.Superior)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV11- 5447 SVW (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
| --- | --- | --- |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
DAVID KAPLAN

**DEFENDANTS**
BAXTER HEALTHCARE CORPORATION
(erroneously sued as BAXTER HEALTHCARE, INC.)

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
FRIEDMAN, ENRIQUEZ & CARLSON, LLP
Grant A. Carlson, Esq. / Wendy K. Shiff, Esq.
433 North Camden Drive, Suite 965
Beverly Hills, CA 90210
Telephone: (310) 273-0777

Attorneys (If Known)
SEYFARTH SHAW LLP
Jon D. Meer (SBN 144389) / Jonathan L. Brophy (SBN 245223)
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III.)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Wrongful termination and intentional infliction of emotional distress; 28 U.S.C. § 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

TORTS PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

IMMIGRATION
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

TORTS PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

BANKRUPTCY
☐ 22 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

CIVIL RIGHTS
☐ 441 Voting
☒ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities-Employment
☐ 446 American with Disabilities-Other
☐ 440 Other Civil Rights

PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition

FORFEITURE / PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

SOCIAL SECURITY
☐ 61 HIA(1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW 405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

CV11-05447

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☒  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Baxter Healthcare Corporation is incorporated in Delaware and has its principal place of business in Illinois. |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):  Date  June 30, 2011

Jonathan L. Brophy

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com